## 33916. PLANE v. AWTRY & LOWNDES COMPANY.

WORRILL, J. 1. Where the court, considering a general demurrer to a petition, passes an order on October 15, 1951, providing that "it is ordered and adjudged that the general demurrer is sustained and the suit is dismissed unless amended within ten (10) days," the order is dual in character, in that the part requiring amendment is merely interlocutory in character and subject to exceptions pendente lite, while the part providing for automatic dismissal in the future will constitute a final judgment ending the case if no amendment is filed. Under such an order the petition, whether amended or not, remains pending until October 25, 1951, so that no writ of error could be sued out before that time; hence the plaintiff has 20 days from that date in which to present a final bill of exceptions complaining of such dismissal. *Luke v. Ellis,* 201 *Ga.* 482 (2, 3) (40 S. E. 2d, 85).

2. However, since the plaintiff did not except pendente lite to the interlocutory part of the order, adjudging on October 15 that the petition was subject to dismissal as a whole unless amended, and since the bill of exceptions on which the writ of error was issued was tendered on November 9, more than 20 days after the date of the order, no review of such interlocutory part of the order can be made, and it must therefore be treated as the law of the case, requiring automatic dismissal on October 25, for failure to amend. *Luke* v. *Ellis,* supra.

*Judgment affirmed. Sutton, C. J., and Felton, J., concur.*

DECIDED FEBRUARY 28, 1952.

*Frank A. Bowers,* for plaintiff.
*Northcutt & Edwards,* for defendant.

Mrs. May F. Plane sued Awtry & Lowndes Company in the Superior Court of Fulton County, and alleged substantially as follows: The defendant corporation was engaged in the undertaking business in Atlanta, Georgia. On May 11, 1950, the plaintiff's husband died in Miami, Florida, and the body was delivered to Combs Funeral Home in Miami. The body was promptly and properly embalmed by a licensed embalmer. Combs Funeral Home shipped the body and casket to Atlanta, and wired the defendant to meet the train and secure the body for funeral services and interment. The plaintiff and a son went to Atlanta on the same train. The train arrived at the Terminal Station about 8 a.m. on Monday, May 15, 1950, but the defendant did not have anyone to meet the train. After waiting an hour, the plaintiff telephoned the defendant, and a short time thereafter the defendant's employees arrived. As the plaintiff

entered the funeral home about 10 a.m. to make funeral arrangements, she was accosted by Joe Awtry, president of the defendant corporation, who said: "Mrs. Plane, I have been trying to locate you. We cannot have a funeral here, account of the violent odor." Awtry said he didn't know the cause of the odor, but blamed it on the Miami undertakers, and said he would have to get the body out at once. The defendant then had a grave prepared in West View cemetery and about 3 p.m. secured six professional pallbearers and a minister who lived across the street from the cemetery, and hurriedly buried the body without the presence of any of the family except the plaintiff and two sons. Unknown to the plaintiff at the time, the Miami undertakers had sprinkled a chemical powder called "Paulex Powder" into the casket. Prior to shipping, most leading undertakers place such powder in caskets to prevent mold on the body. When confined the powder forms a vapor which has a sharp, acrid odor, and when a casket is opened it is necessary to allow it to air out to dissipate the fumes and odor. If there was any violent odor from the casket of the plaintiff's husband, it was not a natural odor but was from the fumes of Paulex Powder and could have been dissipated within a few hours. The defendant was negligent in failing to ascertain the cause of the odor and in failing to air out the casket. The malpractice of the defendant caused the plaintiff untold mental anguish and suffering, denying her the comfort of a decent funeral for her husband. The plaintiff prayed for $25,000 damages.

The defendant filed a general demurrer, which on October 15, 1951, was ruled on as follows: "There being no actual damages sued for in this case, the only damage claimed being for mental suffering and peace of mind, the court is of the opinion that the action cannot be maintained; therefore, it is ordered and adjudged that the general demurrer is sustained and the suit is dismissed unless amended within ten (10) days." The plaintiff filed no amendment and the case was dismissed by operation of law upon the expiration of the ten days. To this judgment the plaintiff excepted and tendered her bill of exceptions on November 9, 1951.